**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | |
|---|---|
| **TOMMY HOLLINGSWORTH,** ) | |
|   ) | |
| **Plaintiff,** ) | |
|   ) | |
| v.   ) | Case No. 1:20-cv-01041-STA-cgc |
|   ) | |
| **HENRY COUNTY, et al.,** ) | |
|   ) | |
| **Defendants.** ) | |

**ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS**

Before the Court is Defendants Henry County, Tennessee; Henry County Sheriff Monte Belew, Steve Dean, Stephen Page, Daniel Powell, Wayne Fuqua, Brent Coffman, Kyle Cronkright, Gary Carroll, Hunter Wade, Rob Camper, and William B. Smith's Motion for Partial Dismissal (ECF No. 36). Plaintiff Thomas Hollingsworth, as personal representative of the Estate of Christopher Archie, has responded in opposition. Defendants have submitted a reply. For the reasons set forth below, the Motion is **GRANTED**.

**BACKGR7\OUND**

Plaintiff filed this action seeking damages for the violation of Christopher Archie's constitutional rights pursuant to 42 U.S.C. § 1983. Specifically, Plaintiff alleges that Defendants violated Archie's Fourteenth Amendment right to substantive and procedural due process by showing deliberate indifference to Archie's serious medical needs while he was a pretrial detainee at the Henry County Detention Facility. Defendants now move to dismiss claims against some of the Henry County Sheriff's Department officials named as Defendants. The Court accepts the following well pleaded factual allegations of the First Amended Complaint (ECF No. 28) as true for purposes of deciding Defendants' Partial Motion to Dismiss.

Plaintiff's decedent Christopher Archie was a 34-year old resident of Henry County, Tennessee, who suffered from dangerously high blood pressure. (Am. Compl. ¶¶ 15, 17.) On January 24, 2019, Henry County Sheriff's Deputy Gary Carroll arrested Archie on an out-of-state warrant. (*Id*. ¶ 15.) At the time of his arrest, Archie told Deputy Carroll about his condition and gave him two of the prescription pills he took to control his blood pressure. (*Id*. ¶ 17.) Archie bonded out later the same day, and an unknown deputy returned his medication to him. (*Id*. ¶ 18.) Within days, a judge revoked his bond after learning about a second out-of-state warrant for Archie's arrest. (*Id*. ¶ 19.) Henry County Sheriff's Deputy Wayne Fuqua took Archie back into custody on January 29, 2019, after the court revoked his bond and ordered his arrest. (*Id*. ¶ 20.) The First Amended Complaint implies that Archie did not have his blood pressure medication with him at the time of his second arrest and does not indicate whether Archie informed Fuqua about his health condition.

During his pretrial detention at the Henry County Detention Facility, Archie began to experience severe headaches and complained about them to other inmates and also to family members during phone calls. (*Id*. ¶ 21.) On January 31, 2019, two days after Archie had been taken back into custody, a family member attempted to deliver Archie's blood pressure medication to the jail. (*Id*. ¶ 22.) An unnamed deputy jailer refused to accept the medication and turned Archie's family member away. (*Id*.) Archie continued to experience bad headaches, dizziness, and head pressure in the days that followed. On February 14, 2019, Archie complained about his headache to Deputy Kyle Cronkwright who provided Archie with ibuprofen. (*Id*. ¶ 23.)

By February 16, 2019, Archie's condition had deteriorated. When Archie requested medical attention, Deputy William Smith advised him to lie down. (*Id*. ¶ 24.) By 5:30 p.m. that evening, Archie had grown so weak another inmate had to push the sick call button for him. (*Id*.)

When Archie reported to Deputies Brent Coffman and Hunter Wade that his head felt like it was going to explode, the deputies provided him with Tylenol and escorted Archie to the booking area for medical evaluation. (*Id.*) As Archie sat in the booking area, he had obvious difficulty in sitting upright and suffered serious pain. (*Id.* ¶ 25.) Deputy Carroll, the officer who had arrested Archie the first time back on January 19, 2019, observed Archie in distress and asked him if he had been receiving his blood pressure medication. (*Id.* ¶ 26.) Only after Archie fell to the floor in pain and began to seize did deputies finally call for medical help. (*Id.*) After an ambulance arrived, Deputy Rob Camper suggested to paramedics that Archie may have suffered a drug overdose. (*Id.* ¶ 27.) Based on Camper's mistaken assumption, paramedics administered Narcan. (*Id.* ¶ 26.) Archie never regained consciousness and died after being transported to Vanderbilt University Medical Center. (*Id.* ¶ 28.)

In their Partial Motion to Dismiss, Defendants argue that the First Amended Complaint fails to state a plausible claim for relief against certain Defendants in an individual capacity. First, Sheriff Belew and Dean, Page, and Powell (all administrative officers at the Henry County Correctional Facility) contend that Plaintiff has not alleged how any of them were deliberately indifferent to Archie's serious medical needs or were otherwise personally involved in the denial of Archie's medical care. Second, Defendants argue that the First Amended Complaint only alleges that Deputy Fuqua arrested Archie on January 29, 2019. There is no other allegation to show that Deputy Fuqua was personally involved in Archie's medical care, other than placing him under arrest. Finally, Defendants argue that the First Amended Complaint fails to state a section 1983 claim against Sergeant Camper. Plaintiff only alleges that Camper mistakenly supposed that Archie was experiencing a drug overdose and that Camper directed another jail employee to go back to Archie's cell and inquire about it. Defendants contend that these facts are inconsistent

3

with deliberate indifference.  For each of these reasons, Defendants argue that the Court should dismiss all claims against these individual Defendants.

Plaintiff has responded in opposition.  Plaintiff first argues that Defendants have essentially moved for summary judgment by arguing that Plaintiff has failed to allege sufficient facts to support his claims against certain individual Defendants.  Without an opportunity for discovery, Plaintiff has no way to allege all of the material facts concerning each Defendant's actions. Plaintiff contends then that the Court should deny Defendants' Motion for this reason alone.  As far as the allegations against Sheriff Belew and the jail administrative officers Dean, Page, and Powell, Plaintiff argues that the pleadings have alleged enough facts to hold each liable for Archie's death.  The First Amended Complaint shows that each of these Defendants was on notice of Archie's serious health condition. Plaintiff has alleged that Archie was held at the Henry County Correctional Facility previously and that Archie made a number of complaints to staff.  Plaintiff contends that this suffices to allege a pattern or practice of deliberate indifference, or at the very least acquiescence or implicit authorization of staff's deliberate indifference to the serious medical needs.  Plaintiff also argues that the First Amended Complaint contains enough facts to hold Deputies Fuqua and Sergeant Camper liable for their involvement in Archie's detention and awareness of his serious medical needs.

In their reply Defendants disagree that their Motion does anything other than test the sufficiency of the pleadings.  Defendants restate their position that the First Amended Complaint contains no facts to show how Sheriff Belew or the jail administrators were personally involved in Archie's treatment.  Plaintiff's arguments about "staff" and "systemic failures" at the jail are not supported with factual contentions in the pleadings.   Likewise, Plaintiff has not shown that his

4

First Amended Complaint makes any allegations of personal involvement on the part of Fuqua or Camper to suggest deliberate indifference to a serious medical need.

## STANDARD OF REVIEW

Plaintiff argues that Defendants' Rule 12(b)(6) challenge unfairly puts Plaintiff to his proof, even though the case is only at the pleadings stage and the parties have engaged in no discovery. The Court finds Plaintiff's argument unpersuasive. Defendants' Motion presents classic Rule 12(b)(6) issues and bears none of the hallmarks of a Rule 56 motion for summary judgment. A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). As part of its standard of review, the Court is confined to the allegations of the pleadings and is bound to accept the facts alleged in the First Amended Complaint as true and construe them in the light most favorable to Plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992). In their Partial Motion to Dismiss, Defendants have contested the plausibility of the pleadings based only on Plaintiff's failure to allege essential elements of his claims against some but not all Defendants. This is precisely the sort of argument a party may raise under Rule 12(b)(6). *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003) ("To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."). And Defendants have not presented any evidence outside of the pleadings and have not argued that the evidence fails to show any genuine disputes of material fact, in other word, the kinds of arguments which typically implicate Rule 56. All of this confirms that Defendants' request for judgment as a matter of law is based on Rule 12(b)(6) and the sufficiency of the pleadings.

Plaintiff argues that the dismissal of certain Defendants at this stage of the case would prematurely deprive Plaintiff of the opportunity to develop the facts concerning these Defendants and their possible liability for the denial of Archie's constitutional rights. But this argument puts the proverbial cart before the horse. It is true that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8 standard does not require "detailed factual allegations," just something more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). However, before a plaintiff can "unlock the doors of discovery," *Iqbal*, 556 U.S. at 678–79, the plaintiff must plead facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. So, Plaintiff's argument that he is entitled to some measure of discovery before Defendants can challenge the plausibility of the pleadings is not altogether convincing.

The Court concludes that Defendants' Motion raises a Rule 12(b)(6) challenge to the sufficiency of the First Amended Complaint, Plaintiff's arguments to the contrary notwithstanding.

## **ANALYSIS**

The issue presented at the pleadings stage is whether the First Amended Complaint states plausible § 1983 claims against certain Defendants. Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law," commonly known as a state actor.

*Wittstock*, 330 F.3d at 902.  Defendants argue that the First Amended Complaint fails to allege enough facts to hold certain Defendants who are supervisory officials, including Henry County Sheriff Monte Belew, liable in their individual capacities and otherwise fails to state a plausible claim for relief against Deputy Fuqua or Sergeant Camper.  The Court now considers the merits of each line of argument.

### I.    Claims Against Supervisory Officials

Plaintiff alleges that Sheriff Belew and Dean, Page, and Powell, who were all supervisory or administrative personnel at the jail, are liable under § 1983 for deliberate indifference to Archie's serious medical needs.  The question is whether the First Amended Complaint alleges the kind of personal involvement required to hold the supervisory officials liable in an individual capacity.  State actors can be sued in their official capacity or individual capacity.  An official capacity claim "is only nominally against the official and in fact is against the official's office," while an individual capacity claim seeks to hold a defendant individually liable for his own actions.  *Lewis v. Clarke*, 137 S.Ct. 1285, 1291 (2017) (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).

Supervisory personnel like these Defendants may not be held personally liable under § 1983 merely on the basis of *respondeat superior*.  *Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Winkler v. Madison Cnty.*, 893 F.3d 877, 898 (6th Cir. 2018) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).  A supervisor will not be liable "simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another."  *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v.*

*City of Louisville,* 444 F.3d 725, 751 (6th Cir. 2006). "Active unconstitutional behavior," and not the "mere failure to act," is required. *Id*.

The Court holds that the First Amended Complaint fails to state plausible § 1983 individual capacity claims against Belew, Dean, Page, and Powell. There is no allegation of personal involvement to connect any of these supervisory officials with Archie's arrest, detention, or medical care during his incarceration at the jail. Plaintiff resists this conclusion arguing that "staff" had something like constructive knowledge of Archie's serious medical needs, based on information received by Deputy Carroll when he initially arrested Archie, from Archie's own complaints and requests for help during his detention, and perhaps even from Archie's previous incarceration at the Henry County Detention Facility. But none of these arguments, even if they were supported with well-pleaded facts in the First Amended Complaint, would make the supervisory officials liable in their individual capacities.

It is true that a supervisor can be liable without being present and witness to the unconstitutional act of a subordinate and even if the supervisor himself has not "physically put his hands" on an inmate. *Peatross*, 818 F.3d at 242. A supervisor may be actively involved in unconstitutional conduct if the supervisor "encouraged the specific incident of misconduct or in some other way directly participated in it." *Id*. This means a § 1983 plaintiff can also show that the official implicitly authorized the misconduct, approved of the misconduct, or knowingly acquiesced in the misconduct of a subordinate. *Campbell v. City of Springfield, Ohio*, 700 F.3d 779, 790 (6th Cir. 2012) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). While there is not always a bright line between acquiescence and the mere failure to act, a supervisor may be liable where he has "abandon[ed] the specific duties of his position in the face of actual knowledge of a breakdown in the proper workings of the department." *Winkler*, 893 F.3d at 898 (affirming

8

summary judgment for a county jail administrator where the plaintiff had not shown that the jailer "allowed the jail to operate with the knowledge that existing healthcare policies were exposing inmates to a substantial risk of serious harm") (quoting *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995)).

But this is not the case here, or at least not the case Plaintiff alleged in the First Amended Complaint. Plaintiff has not alleged "a breakdown in the proper workings" of the Henry County Detention Center, much less that Sheriff Belew or other jail administrators knew about such a breakdown and turned a blind eye to it. *Winkler*, 893 F.3d at 898. Put another way, Plaintiff does not allege that any supervisory official "abdicated his specific job responsibility" or that the performance of the supervisor's job had a causal connection to Archie's denial of medical care. *Id.* at 898–99; *see also Campbell*, 700 F.3d at 790 (holding that a sheriff's "indifference to maintaining a properly functioning K-9 unit could be reasonably expected to give rise to just the sort of injuries that occurred"). In sum, Plaintiff has alleged no facts to hold these Defendants liable under an abandonment or abdication theory of supervisory liability. Therefore, Defendants are entitled to the dismissal of all claims against Sheriff Belew and Dean, Page, and Powell in their individual capacities.

## II. Deputy Fuqua and Sergeant Camper

Defendants also seek the dismissal of the individual capacity claims against Deputy Fuqua and Sergeant Camper, though for different reasons. Defendants do not contest the First Amended Complaint's allegations about Fuqua and Camper's personal involvement in Archie's case. Defendants just argue that the First Amended Complaint fails to state plausible § 1983 claims against either Defendant. The Court agrees.

In any § 1983 case, the "threshold inquiry" is "to identify the specific constitutional right" at issue and then "determine the elements of, and rules associated with, an action seeking damages for its violation." *Manuel v. City of Joliet, Ill.*, 137 S.Ct. 911, 916 (2017) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). In this case the First Amended Complaint alleges a deliberate indifference to Archie's serious medical needs while he was a pretrial detainee at the Henry County Detention Facility. "The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 566 (6th Cir. 2020) (quoting *Winkler*, 893 F.3d at 890). The Sixth Circuit analyzes both Eight Amendment and Fourteenth Amendment denial-of-medical-care claims under the same legal standards. *Id.* (collecting cases).

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component under *Farmer* requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Id.* at 897 (internal quotation marks omitted). For purposes of Defendants' Partial Motion to Dismiss, the Court assumes without deciding that Archie suffered from a serious medical need. Archie's elevated blood pressure and his need for medication to control the condition arguably meet the test for a sufficiently serious medical need.

To establish Farmer's subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the prison official acted with a "sufficiently culpable state of mind."

*Farmer*, 511 U.S. at 834.  Specifically, a plaintiff must show that the official acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm.  *Id.*  The Court notes that there currently exists some debate about over whether the Eighth Amendment's deliberate indifference standard should apply to a pretrial detainee's § 1983 conditions-of-confinement claims under the Fourteenth Amendment, including claims for the denial of medical care.  The Supreme Court decided in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015) that a pretrial detainee's excessive force claim should be analyzed under the Fourteenth Amendment's objective reasonableness standard and rejected a test based on the officers' "subjective[] awareness that their use of force was unreasonable."  *Kingsley*, 135 S. Ct. at 2470, 2472–73.  The Sixth Circuit has "recognize[d] that [*Kingsley*'s] shift in Fourteenth Amendment deliberate indifference jurisprudence calls into serious doubt whether [a pretrial detainee] need even show that the individual defendant-officials were subjectively aware of her serious medical conditions and nonetheless wantonly disregarded them."  *Richmond v. Huq*, 885 F.3d 928, 938 n.3 (6th Cir. 2018).

In a number of reported cases since *Kingsley*, however, the Sixth Circuit has continued to apply the Eight Amendment's deliberate indifference standard in denial of medical treatment cases brought by pretrial detainees.  *See Winkler*, 893 F.3d at 890; *Bays v. Montmorency Cnty.*, 874 F.3d 264, 268 (6th Cir. 2017) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983)); *Brown v. Chapman*, 814 F.3d 436, 444 (6th Cir. 2016); *Baynes v. Cleland*, 799 F.3d 600, 618 (6th Cir. 2015).  And in *Richmond*, despite wondering whether *Kingsley* had altered the deliberate indifference standard under the Fourteenth Amendment, the panel once again applied the Eighth Amendment's deliberate indifference standard to a pretrial detainee's claims for inadequate medical care.  *Richmond*, 885 F.3d at 937–38.

In two recent reported decisions on this issue, the Court of Appeals recognized the emerging circuit-split over the sweep of *Kingsley*'s holding but again declined to take a side. *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482 n.8 (6th Cir. 2020) ("Plaintiffs and their amici assert that we should adopt the standard used by the Second, Seventh, and Ninth Circuits which applies *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 192 L.Ed.2d 416 (2015) to claims of inadequate medical treatment claims raised by pretrial detainees. This case does not present the opportunity to do so, though the question remains open whether *Kingsley* applies beyond excessive-force claims."); *Griffith*, 975 F.3d at 570 ("Our court has generally stayed out of the fray. We have found it unnecessary to answer the question each time we have confronted the issue, instead holding that the same result would obtain under either the subjective test dictated by *Farmer* or by a purely objective test derived from *Kingsley*.").

In the final analysis, the Court declines to rule on this question. The parties have not specifically argued the *Kingsley* issue and have instead argued that the deliberate indifference standard applies. What is more, the First Amended Complaint fails to allege a plausible § 1983 claim against Fuqua and Camper under either standard. Therefore, the Court finds it unnecessary to decide whether a deliberate indifference standard or an objective reasonableness standard applies to Plaintiff's claims for the denial of Archie's medical care.

Concerning Deputy Fuqua, the First Amended Complaint alleges that Fuqua arrested Archie on January 29, 2019, after a judge revoked Archie's bond. This is the extent of the allegations about Deputy Fuqua's contact with Archie. Other than this single encounter, there are no allegations that Fuqua had any other interaction with Archie during his pretrial detention. None of the facts, as pleaded, suggest that Archie advised Fuqua about his need for medication, addressed any medical complaints to Fuqua, or made any requests for treatment to Fuqua. The

12

First Amended Complaint does allege that Archie telephoned a family member after his arrest and complained of a severe headache, presumably the same day Fuqua arrested him. Even construing the pleadings in a light most favorable to Plaintiff, there is simply nothing in the pleadings to suggest that Deputy Fuqua was ever aware of a substantial risk to Archie, much less that he disregarded the risk, or that Fuqua acted in an objectively unreasonable manner at the time of Archie's arrest. Without more, the First Amended Complaint does not state a plausible § 1983 claim against Fuqua in his individual capacity for deliberate indifference to Archie's serious medical needs.

As for Sergeant Camper, the First Amended Complaint alleges that when Archie began to seize at some point during his detention, Deputy Camper was present when paramedics arrived to treat Archie. Plaintiff specifically alleges that Camper directed another jailer to go to Archie's housing pod to ask what drugs Archie had taken, apparently hypothesizing that Archie might be experiencing a drug overdose. According to Plaintiff, Camper's theory played some part in the paramedics' decision to administer Narcan, the trade name for "Naloxone, a drug that reverses the potentially lethal depression of the central nervous system and respiratory system caused by opioids." *United States v. Brown*, 752 F. Appx. 309, 311 & n.1 (6th Cir. 2018).

But these allegations do not rise to the level of deliberate indifference or show that Camper's actions were objectively unreasonable. If anything, the pleadings suggest that Camper may have acted negligently, and "liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process." *Kingsley*, 135 S. Ct. at 2472 (emphasis in original); *see also Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence."). The Court concludes then that Defendants are entitled to the dismissal of the individual capacity claims against Fuqua and Camper.

## CONCLUSION

The First Amended Complaint fails to allege any claim against Sheriff Belew and Dean, Page, and Powell in their individual capacities. Plaintiff also failed to allege a plausible § 1983 claim against Fuqua or Camper in an individual capacity. Therefore, Defendants' Partial Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

           **s/ S. Thomas Anderson**
           S. THOMAS ANDERSON
           CHIEF UNITED STATES DISTRICT JUDGE

Date: December 8, 2020.